*B. McKay Mignault, Chief Bankruptcy Judge*
*United States Bankruptcy Court*

**Dated: November 21st, 2023**

# UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF WEST VIRGINIA
## AT CHARLESTON

| | |
|---|---|
| IN RE: | CASE NO. 2:19-bk-20003 |
| DONALD RAY WELLING, | CHAPTER 12 |
| Debtor. | JUDGE B. MCKAY MIGNAULT |

## MEMORANDUM OPINION AND ORDER
### GRANTING DEBTOR'S SALE MOTION AND CONTINUING MOTION TO DISMISS CASE FILED BY CREDITOR FARM CREDIT OF THE VIRGINIAS, A.C.A

Pending before the Court are two contested matters: (i) *Creditor Farm Credit of the Virginias, A.C.A.'s Notice of Default and Motion to Dismiss* [dkt. 209] ("Motion to Dismiss") and the Debtor's *Response* thereto [dkt. 216] ("Response to Motion to Dismiss") and (ii) the Debtor's *Amended Motion to Sell Debtor's Farm Located in Given, Jackson County, West Virginia* [dkt. 233] ("Sale Motion"), *the Response in Opposition to Debtor's Motion to Sell by Creditor Farm Credit of the Virginia, A.C.A.* [dkt. 246] ("Response to Sale Motion"), Debtor's *Notice of Argument in Support of the Motion to Sell* [dkt. 253] ("Debtor's Memorandum"), and *Response of Creditor Farm Credit of the Virginias, A.C.A. to the Note of Argument Filed by Debtor* [dkt. 255] ("Farm Credit's Memorandum").

Through these filings, creditor Farm Credit of the Virginias, A.C.A. ("Farm

1

Credit") seeks dismissal of this case due to the Debtor's failure to make payments required under the confirmed plan so it can pursue its rights and remedies against the Debtor under state law, namely foreclosure upon the Debtor's family farm and related assets. The Debtor, on the other hand, seeks authority to sell the family farm to an insider, the Debtor's sister, in an amount sufficient to satisfy Farm Credit's crammed-down claim secured by the family farm as agreed to by Farm Credit in a court-approved stipulation and confirmed plan. Farm Credit opposes the sale, arguing that it should be released from its agreement due to the Debtor's default under the plan.

For the reasons set forth herein, the Court concludes that it is appropriate to grant the Sale Motion. The Stipulation between the Debtor and Farm Credit established the manner in which Farm Credit would be repaid on its bifurcated, crammed-down claims. That Stipulation was incorporated into the Confirmation Order, which is now *res judicata* regarding the Debtor's obligations to Farm Credit. The proposed sale would enable the Debtor to pay one of Farm Credit's two claims in full earlier than anticipated by the Plan and enable the Debtor to partially cure its payment default under the Plan. The Court will continue the Motion to Dismiss ninety (90) days to enable the Debtor an opportunity to close on the approved sale and develop a proposal to cure the remaining payment default under the Plan.

I.     **FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

1. The facts relating to this matter are undisputed.

2. On January 10, 2019, Donald Ray Welling (the "Debtor") commenced this case pursuant to chapter 12 of Title 11 of the United States Code (the "Bankruptcy Code").

3. Ryan W. Johnson is the Chapter 12 Trustee (the "Trustee").

4. Prior to this bankruptcy case, on June 12, 2012, the Debtor and his wife entered into a Promissory Note payable to Farm Credit in the original principal amount of

$615,250.00.

5. After various modifications and restatements, the Debtor and Farm Credit entered into a Note Modification and Forbearance Agreement dated June 21, 2016.

6. The Debtor's obligations under the Note and Forbearance Agreement fully matured on November 1, 2017.

7. The Debtor's indebtedness to Farm Credit is secured by a lien upon the Debtor's farm located at 3370 Shamblin Run Road, Given, West Virginia (the "Family Farm") pursuant to a Credit Line Deed of Trust dated September 13, 2011 and recorded in Jackson County, West Virginial on September 16, 2011.

8. Pursuant to a December 2, 2008 Security Agreement, the indebtedness to Farm Credit is also secured by the Debtor's machinery, equipment, and livestock (the "Personal Property" and collectively with the Family Farm, the "Collateral")).

9. As of the Petition Date, Farm Credit held a claim against the Debtor in the amount of $584,711.97.

10. On March 4, 2019, Farm Credit file a *Motion for Relief from the Automatic Stay* [dkt. 22] seeking an order terminating the automatic stay of 11 U.S.C. § 362 to foreclose upon the Collateral. The Motion for Relief valued the Family Farm at $270,000 and valued the Collateral in its entirety at $442,000.

11. The Debtor filed an initial Chapter 12 plan on March 7, 2019, and filed several amended plans, to which Farm Credit objected. *See* Dkt. Nos. 29, 38, 61, 88, 96, 129, 137, 164, 172.

12. On June 2, 2020, the Debtor and Farm Credit filed a Joint Motion requesting Court approval of a stipulation resolving Farm Credit's motion for relief and objection to

confirmation (the "Stipulation"). *See* Dkt. 150.

    13. The Stipulation bifurcated Farm Credit's claim into two separate claims with separate collateral and crammed each of those claims down to the value of its collateral:

    a. $268,000.00 secured by the Family Farm, payable at 6.5% interest over a 20-year term (the "Real Estate Claim"); and

    b. $90,000.00 secured by the Personal Property, payable at 6.5% interest over a 15-year term ("Personal Property Claim").

The Stipulation provided that it "constitutes the entire agreement between the parties as to the subject matter herein contained, and no amendments, modification, waiver, or discharge of any provision of this Stipulation shall be effective unless it is in writing and executed by the Parties." *See* Dkt. 150 at 6.

    14. On June 17, 2020, the Court approved the Stipulation by entry of its *Order Entering and Approving Stipulation and Agreement* [dkt. 152], which required that "the language set forth in the Stipulation be incorporated into a Proposed Order confirming the existing Plan and that counsel for Farm Credit shall endorse any such Order."

    15. On August 28, 2020, the Court entered its *Order Confirming Chapter 12 Plan* [dkt. 175] (the "Confirmation Order"). As required by the Stipulation, the Confirmation Order requires the Debtor to pay the following secured claims to Farm Credit directly, as follows:

1. Loan of $530,960.57 secured on a 265-acre farm and buildings valued at $268,000.00 located in Jackson County, West Virginia shall be paid as follows: $23,977.85 annually by October 31 each year for twenty (20) years beginning with the first eleven month payment from the Trustee at confirmation and thereafter from the Debtor. The loan is amortized at 6.5% interest.

2. Allowed secured claim of Farm Credit of Virginians in the amount of $358,000.00, also secured by equipment and cattle valued at $90,000.00, shall be paid as follows: $9,408.00 annually by October 31 each year for fifteen (15) years, The equipment loan payment is payable over 15 years with interest at 6.5% The first eleven (11) month payment will be at confirmation by the Trustee and thereafter by the Debtor.

All other terms of the joint stipulation (DKT 152) approved by the Court are incorporated by reference and are part of this confirmation order.

16. The Debtor failed to timely pay the payments of $9,408.00 (on the Personal Property Claim) and $23,977.85 (on the Real Estate Claim) when they came due on October 31, 2022 (the "Fall 2022 Payment").

17. Farm Credit filed its Motion to Dismiss the case on May 12, 2023, arguing that the case should be dismissed pursuant to 11 U.S.C. § 1208(c)(6) due to the Debtor's payment default under the Confirmation Order. *See* 11 U.S.C. § 1208(c)(6) ("the court may dismiss a case under this chapter for cause, including. . . (6) material default by the debtor with respect to a term of a confirmed plan.").

18. The Debtor filed the Response to Motion to Dismiss on June 13, 2023, admitting that the Fall 2022 payment to Farm Credit had not been made, but the Debtor was working toward curing that default and the Debtor's son has applied for a loan to purchase the Family Farm and pay off that portion of the loan owed to Farm Credit.

19. The Court heard the Motion to Dismiss on June 14, 2023, and at that hearing Debtor's counsel explained that the Debtor he has lived on the Family Farm for 75 years, since he was in kindergarten. The Debtor was too ill to attend the June 14, 2023 hearing and subsequent hearings, but his son and family members have attended these hearing in support of their efforts to

preserve the Family Farm as a family farming operation. At the June 14th hearing, Debtor's counsel reported that a loan application had recently been submitted to the USDA, and the Court continued the hearing thirty (30) to see whether the USDA loan application would be accepted.

20. On July 17, 2023, the Court entered an Order [dkt. 227] authorizing the Chapter 12 Trustee to disburse $10,208.90 to Farm Credit. This payment partially cured the $33,395.85 Fall 2022 Payment default under the Plan.

21. The USDA loan application to the Debtor's son was ultimately denied.

22. On August 11, 2023, the Debtor filed the Sale Motion requesting approval to sell the Family Farm to the Debtor's sister, Helen Fischer, for $232,000.00. Attached to the Sale Motion as Exhibit A is a July 21, 2023 payoff from Farm Credit showing that the Total Debt secured by the Family Farm as of July 31, 2023 was $240,301.97, with $38.60982 accruing daily in interest. After applying the $10,208.90 that was paid to Farm Credit pursuant to the Court's July 17, 2023 order, the Debtor believed that the proposed purchase price would be sufficient to satisfy Farm Credit's Real Estate Claim.

23. On September 1, 2023, Farm Credit filed its Response to the Sale Motion, opposing the proposed sale and arguing that the case should instead be dismissed due to Debtor's uncured material breach of the Fall 2022 Payment owed under the Plan. Farm Credit also opposed the sale on equitable grounds because it would result in a potential windfall to the Debtor to the detriment of Farm Credit because an April 10, 2023 appraisal of the Family Farm valued the property at $478,000.00. An excerpt of this appraisal was attached as Exhibit A. Farm Credit also argued that the Sale Motion should be denied given the history of the case—although Farm Credit had agreed to bifurcate its claim into two claims with separate collateral and to cram down those claims to the value of the collateral securing each claim, Farm Credit argues that it should "no

6

longer be held to the terms of the Stipulation as a result of the Debtor's breach."

24. The Sale Motion was first heard on September 6, 2023, during which time Debtor's counsel relied upon legal authorities in his oral argument that were not included in the filings. The Court requested that the Debtor supplement the Sale Motion with these authorities, to which Farm Credit may file a Response.

25. On September 18, 2023, the Debtor's Memorandum was filed providing citations to the legal authorities referenced during the prior hearing. The Debtor's Memorandum argued that the proposed purchase price in the Sale Motion is sufficient to satisfy the remaining payoff the Debtor owes to Farm Credit for its Real Estate Claim under the Plan. The Debtor argued that the Confirmation order creates a contract between the Debtor and Farm Credit. *See Harper v. The Oversight Comm, (In re Conco, Inc.)*, 855 F.3d 703, 711 (6th Cir. 2017) (citing *Official Comm. of Unsecured Creditors v. Dow Corning Corp. (In re Dow Corning Corp.*), 456 F.3d 668, 675–76 (6th Cir. 2006)). As such, the purchase price is sufficient because the Debtor is seeking to pay off the obligation due under the Plan with interest, which would be the measure of damages in a breach of contract action, by selling the collateral and paying the remaining balance in full. Additionally, the Debtor argues that the purchase price is sufficient because any postpetition increase in the value of the Family Farm belongs to the Debtor. *See* 11 U.S.C. § 1227(b) ("Except as otherwise provided in the plan or the order confirming the plan, the confirmation of a plan vests all of the property of the estate in the debtor."); *Rodriguez v. Barrera (In re Barrera*), 22 F.4th 1217, 1222 (10th Cir. 2022) (holding that sale proceeds from the appreciation in value of a debtor's property after filing a Chapter 13 petition but before converting the bankruptcy to Chapter 7 is property of the debtor, not property of the Chapter 7 estate); *In re Klein*, No. 17-19106-JGR, 2022 WL 3902822, at *7 (Bankr. D. Colo. Aug. 23, 2022) (holding that prepetition property interest in a

business entity revested with the Debtors upon confirmation of their Chapter 13 plan and debtors may retain proceeds from the post-confirmation sale of that prepetition property.); *In re Fiddler*, No. 04-4213, 2007 WL 4510308, at *4 (Bankr. N.D.W.Va. Dec. 18, 2007) (denying Chapter 13 Trustee's motion to modify a confirmed plan because post-petition increase in value of debtors' real property was anticipated and not captured by the confirmation order); *Fair v. First Choice Am. Cmty. Fed. Credit Union (In re Fair)*, No. 13-ap-56, 2014 WL 3617875, at *4 (Bankr. N.D.W.Va. July 21, 2014) (holding that the Petition Date is the appropriate date to value debtor's real estate, permitting the debtor to strip off junior liens as unsecured even where the real estate has appreciated in value since the Petition Date as a result of Debtor's post-petition improvements to the property.).[1]

26. On September 28, 2023, Farm Credit filed its Memorandum in response to the Debtor's Memorandum, continuing in its argument that the case should be dismissed due to Debtor's material breach of the terms of the Plan and arguing that the Sale should be denied because the Debtor cannot enforce a Stipulation it has breached under contract law.

27. With the briefing complete, the Court took this matter under advisement. This matter is ripe for adjudication.

**II.     ANALYSIS**

28. Before the Court are two questions: (1) whether the Debtor's payment default under the Plan is a material breach such that the court should dismiss the case pursuant to 11 U.S.C. §1208(c) and (2) whether the proposed post-confirmation sale may be approved.

---

[1] Additionally, the Debtor's Memorandum took issue with Farm Credit's $478,000.00 appraisal because the buildings on the Real Estate are deteriorating, and it valued the Real Estate as "recreational agricultural property" when a recreational farmer probably cannot be a Chapter 12 debtor.

8

29. Farm Credit objects to the proposed sale because (1) the case should be dismissed due to Debtor's material breach of the terms of the Plan and (2) the Debtor cannot enforce a Stipulation it has breached under contract law.

30. Pursuant to 11 U.S.C. § 1208(c), "the court *may* dismiss a case under this chapter for cause, including. . . (6) material default by the debtor with respect to a term of a confirmed plan." 11 U.S.C. § 1208(c) (emphasis add).

31. Dismissal pursuant to Section 1208(c) lies within the Court's discretion, applied on a case-by-case basis.

32. In view of the facts of this case, the Court declines to find that cause exists to dismiss the case at this time due to the Debtor's payment default under the confirmed plan.

33. Significantly, there is no evidence of bad faith on the Debtor's part, and the Debtor appears to have been diligently working, in good faith, to cure the payment default under the Plan.

34. The Debtor made a partial cure payment in July and has proposed a sale of the Family Farm that, when combined with the prior payment, will pay Farm Credit's Real Estate Claim in full.

35. Farm Credit has not asserted in its Objection, Memorandum, or oral argument that the proposed purchase price is insufficient to pay the Real Estate Claim in full.

36. Farm Credit has asserted that the proposed sale will not cure the Debtor's default under the Plan, which is true.

37. The proposed sale will not address the Debtor's smaller plan payment default relating to Farm Credit's Personal Property Claim. However, that claim remains secured by the Debtor's Personal Property, and, in the Court's view, the Debtor should be permitted an

opportunity to cure that claim as well once the Real Estate Claim is satisfied.

38. The Court rejects Farm Credit's various arguments that the Court should not enforce the terms of the Plan and Confirmation Order because the Debtor has missed a payment and is in default.

39. Section 1227(a) provides that a confirmed Chapter 12 plan is binding on the debtor and the debtor's creditors, and the Confirmation Order acts as *res judicata* determination of all matters addressed in the plan. *See, e.g.*, *In re Watkins*, 240 B.R. 735, 739 (Bankr. C.D. Ill. 1999) (creditor could not relitigate his unsecured status as established in Chapter 12 confirmation order). "Because of the *res judicata* effect of confirmation, the provisions of the plan are not subject to collateral attack and may be invalidated only if confirmation is subsequently revoked or the case is dismissed or converted." *See* 8 COLLIER ON BANKRUPTCY ¶ 1227.01[1] (16th ed. 2023).

40. Debtors are permitted to cure plan payment defaults and contract defaults on a daily basis in bankruptcy court; at some point, the Court may determine that the plan payment default is reaches a threshold of materiality such that the case should be dismissed, but a single late payment in the context of the Debtor's ongoing cure efforts does not reach that threshold and is not grounds to determine that the Court's Confirmation is otherwise unenforceable.

41. Farm Credit is bound by the *res judicata* effect of the Confirmation Order, and the stipulated terms embodied therein, and the Debtor's late payment does not invalidate the binding effect of the Confirmation Order.

42. The Court applies additional scrutiny to insider sales, such as the sale proposed to the Debtor's sister. However, in this case those concerns are alleviated because the proposed sale will permit the Debtor to fully satisfy Farm Credit's Real Estate Claim in full. No other parties have objected to the sale.

43. Farm Credit has not objected to the sale price beyond its argument that it creates a windfall to the Debtor since the value of the Family Farm has increased since the time that Farm Credit agreed to the Family Farm's value in the Stipulation. The Court agrees with the Debtor that, pursuant to 11 U.S.C. § 1227(b)-(c) any increase in the value of the Family Farm that occurred after the Confirmation Order was entered vests in the debtor, "free and clear of any claim or interest of any creditor provided for by the plan," including that of Farm Credit. 11 U.S.C. § 1227(b)-(c).

44. In authoring this opinion, the Court remains mindful of Congress' intent in enacting Chapter 12. "Congress has long recognized the unique status of farming… giving farmers special protection in the bankruptcy laws. . . . Through Chapter 12, enacted in 1986 and made permanent in 2005, Congress protected family farmers by giving creditors less control and 'few[er] tools. . . to derail a debtor's efforts to reorganize' in Chapter 12 than in Chapter 11." *See, e.g., In re Packer*, 586 B.R. 274, 283 (Bankr. N.D. Ill. 2018).

### III. CONCLUSION

Accordingly, it is hereby **ORDERED** that:

1. The Sale Motion is **GRANTED**;

2. The hearing on the Motion to Dismiss is **CONTINUED** ninety (90) days to a date and time to be set by the Clerk's office; and

3. The 14-day stay of effectiveness of this order pursuant to Rule 4001(a)(3) is **WAIVED**.

The Clerk's Office shall serve a copy of this written opinion and order on Debtor, Debtor's Counsel, Farm Credit, Farm Credit's Counsel, the Chapter 12 Trustee, and the United States Trustee.